IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JOSE PRECIADO,**<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | § | EP-23-CV-00052-RFC |
| | § | |
| **RECON SECURITY CORP.,**<br>*Defendant*. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Jose Preciado's "Motion for Sanctions, Entry of Default, and Default Judgment" ("Default Judgment Motion") (ECF No. 78) and "Motion for Attorney Fees and Costs" ("Attorney Fee Motion") (ECF No. 79). For the reasons set forth below, the Court **GRANTS** the Default Judgment Motion. The Court **GRANTS** the Attorney Fee Motion in part and **DENIES** it in part.

### I.   BACKGROUND

Plaintiff filed suit against Defendant Recon Security Corp. on February 6, 2023. *See* Pl.'s Original Compl. & Jury Demand, ECF No. 1. Plaintiff accused Defendant of failing to pay overtime as required under the Fair Labor Standards Act ("FLSA"). *Id.* ¶ 47. Plaintiff subsequently amended his complaint and also accused Defendant of sexual harassment and retaliation. Pl.'s Am. Compl. & Jury Demand ¶¶ 65–66 [hereinafter Am. Compl.], ECF No. 7.

Plaintiff and Defendant both filed motions for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 21; Pl.'s Traditional Mot. Partial Summ. J., ECF No. 23. The Court denied Plaintiff's motion and partially granted Defendant's motion, dismissing Plaintiff's claims for sexual harassment and retaliation. Mem. Op. & Order 29–30, ECF No. 39.

On April 11, 2025, Defendant's attorney filed a motion to withdraw as counsel.  *See* Mot. Withdraw Attorney Record, ECF No. 67.  He stated in the motion that Defendant no longer had the resources to continue employing him and requested that he withdraw.  *Id.* at 2.  Defendant's counsel filed a notice with the Court that he had warned Defendant that he might face a default judgment for failure to defend the case.  Counsel's Certification Notice Defendant Withdrawal Representation & Future Events 1, ECF No. 70.  After a hearing, the Court granted the motion to withdraw and gave Defendant 30 days to find new counsel.  Order 2, ECF No. 71.  Defendant was warned that failure to find new counsel could lead to a default judgment being imposed.  *Id.*  This order was sent to Defendant via certified mail.  *See* Certified Mail Receipt, ECF No. 75.  As a corporation, Defendant must be represented by counsel.  *In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. Unit B July 1981).

Defendant did not find new counsel during this 30-day period.  The Court set a status conference for June 30, 2025, and ordered Defendant and its new counsel to be present.  *See* Order Setting Status Conference, ECF No. 73.  This order was sent via certified mail to Defendant.  *See* Certified Mailing, ECF No. 74.  Again, Defendant was warned that failure to appear could lead to a default judgment being imposed.  Order Setting Status Conference 1.  Neither Defendant nor any counsel appeared at the status conference.

Subsequently, Plaintiff filed the two current motions on July 11, 2025.  *See* Default J. Mot., ECF No. 78; Att'y Fee Mot., ECF No. 79.  The Court set a hearing on damages for July 21, 2025, and again ordered Defendant to appear.  *See* Order Setting Hearing, ECF No. 80.  This order was sent to Defendant via certified mail.  *See* Certified Mailing, ECF No. 81.  Defendant did not put in an appearance.  The Court heard Plaintiff's testimony as to damages and now issues the following opinion.

## II.     STANDARD

**A. Default Judgment**

Federal Rule of Civil Procedure 55 governs entry of default and default judgment. In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813–14 (N.D. Tex. 2015).

Procedurally, a defendant defaults if he or she fails to timely respond to the complaint or otherwise defend the case. Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the plaintiff may seek an entry of default judgment. *Id.* 55(b). Default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). In deciding whether default judgment is procedurally proper, the court considers the following factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("*Lindsey* factors").

Next, as to the merits of a motion for default judgment, the court accepts the plaintiff's well-pleaded allegations as true, except regarding damages. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*,

3

814 F.2d 1011, 1014 (5th Cir. 1987).  Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment.  *Nishimatsu*, 515 F.2d at 1206.  In other words, "a defendant's default does not in itself warrant the court in entering a default judgment. . . .  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Id.*  Courts apply the Federal Rule of Civil Procedure 8 standard[1] for the sufficient basis inquiry.  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to the appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  *Id.* 55(b)(2).  A hearing on damages is required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation."  *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Whether default judgment is granted is discretionary with the court.  "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."  *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  Rather, the district court "has the discretion to decline to enter a default judgment."  *Lindsey*, 161 F.3d at 893.

**B. Attorney's Fees**

---

[1] Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

The FLSA requires that, when awarding a judgment to a plaintiff or plaintiffs, "[t]he court . . . *shall* . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). Under the Federal Rules of Civil Procedure, a motion for attorney's fees shall be filed no later than 14 days after judgment is entered, specify the judgment and grounds entitling the movant to attorney's fees, and state the amount sought. Fed. R. Civ. P. 54(d)(2)(B).

In order to determine reasonable attorney's fees, courts in the Fifth Circuit first "calculate the lodestar, 'which is equal to the numbers of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.'" *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017) (citation omitted). "The documentation . . . must be sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Id.* (citation omitted). This usually requires "contemporaneous billing records." *Id.* at 741–42.

"Second, the court should consider whether to decrease or enhance the lodestar based on the *Johnson* factors." *Id.* at 741. These factors are:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10)   The 'undesirability' of the case;

(11)   The nature and length of the professional relationship with the client; and

(12)   Awards in similar cases.

*Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). However, "enhancements . . . must be rare because . . . they can result in a windfall to attorneys," and "the lodestar may be increased only in extraordinary circumstances." *Combs v. City of Huntington*, 829 F.3d 388, 393 (5th Cir. 2016). "There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden 'of showing that such an adjustment is *necessary* to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. And Urb. Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (citation omitted).

## III.   DISCUSSION

### A. Request to Strike Defendant's Answer

Plaintiff requests that the Court use its inherent power to sanction Defendant by striking its answer. Default J. Mot. 1. The Court has an "inherent power . . . to control parties and cases before it. Striking a pleading is within those inherent powers." *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 332 (5th Cir. 2011). "That extreme sanction of striking an answer, however, can be used only where there is bad faith or wil[l]ful abuse of the judicial process." *Id.* Even so, the Fifth Circuit has approved of striking an answer in a case where a corporation refused to hire counsel to defend it. *Donovan v. Rd. Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984). And the Court concludes that there has been clear bad faith and willful abuse of the judicial process here. Defendant discharged its counsel and refused to hire new counsel to represent it, despite repeated warnings from the Court about the risk of a default judgment.

6

Defendant has not appeared at hearings or communicated with the Court in any way. Thus, the Court concludes that Defendant's answer should be stricken.

### B. Procedural Propriety of Default Judgment

Default judgment against Defendant is procedurally appropriate. There are no material issues of fact at issue in the case, given that Defendant defaulted and its answer has been stricken. *See Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018) ("[W]hen a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact." (citation omitted)), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018). Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Defendant's failure to hire new counsel and defend the case. The grounds for default are clearly established. Defendant did not hire a new attorney when ordered by the Court, even though Defendant, as a corporation, must be represented by an attorney. Defendant also failed to show up for the status conference on June 30, 2025. Defendant did not show up for the hearing on damages on July 21, 2025. And Defendant has not responded to Plaintiff's motion for default judgment in any way. Further, Defendant was warned by its former counsel that failure to follow the Court's orders and hire new counsel could result in a default judgment against it. *See* Counsel's Certification Notice Def. Withdrawal Representation & Future Events. "There is ample authority to uphold a district court's power to order entry of a default for failure to comply with court orders or rules of procedure." *McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970); *see also Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 887 (5th Cir. 1968) ("It is well established that the district court has the authority to dismiss or to enter default judgment, depending on which party is at fault, for failure to prosecute with reasonable diligence

7

or to comply with its orders or rules of procedure."). Plaintiff requested that the Court order the Clerk of the Court to enter default against Defendant. Default J. Mot. 2. The Court issued an order doing so. *See* Order, ECF No. 85. There is no evidence that Defendant's default was caused by a good-faith mistake or excusable neglect. Default judgment against Defendant would not be unduly harsh, given that Defendant has been given numerous notices of the risk of default judgment. Lastly, there is not any basis on which the Court would think itself obliged to set aside Defendant's default. Thus, all the *Lindsey* factors are satisfied.

### C. Substantive Merits

Plaintiff seeks relief against Defendant for failure to pay overtime under the FLSA. "The FLSA was 'enacted in 1938 to protect all covered workers from substandard wages and oppressive working hours.'" *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 785 (5th Cir. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016)). It requires employers to pay covered employees the federal minimum wage of $7.25 an hour and pay overtime wages of at least one and a half times the employee's normal wages when the employee works more than 40 hours in a week. *Id.* at 786 (citing 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1)).

If an employee brings an action for unpaid overtime, the employee must show by a preponderance of the evidence:

> (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Plaintiff has alleged that he was Defendant's employee during the time period in question. Am. Compl. ¶¶ 9, 14, 22–24.

"The FLSA guarantees overtime pay to employees engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (quoting 29 U.S.C. § 207(a)(1)). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Id.* Enterprise coverage requires that a company:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).

Plaintiff has alleged that Defendant engaged in activities covered under the FLSA and that, thus, Plaintiff is covered under the FLSA via enterprise coverage. Plaintiff alleges that Defendant engaged in commerce "by receiving shipments of goods and products from other states," by "accepting customers from other states," "by selling services to customers from other states," "by advertising in other states" and "through a website which receives visitors from other states," and "by processing payments through interstate wires." Am. Compl. ¶¶ 15–21. At the hearing on damages, Plaintiff testified that Defendant made more than $500,000 annually. Thus, the requirements of enterprise coverage are satisfied.

And, lastly, Plaintiff testified at the hearing that Defendant violated the FLSA's overtime requirements by failing to pay at least one-and-a-half times Plaintiff's normal wages when Plaintiff worked more than 40 hours in a week.

### D. Entitlement to Damages

A hearing on damages was held on July 21, 2025. Plaintiff testified about the amount of damages due to him. According to Plaintiff, for a 17-week period from June 2020 through September 2020, he worked 25 hours of overtime each week. His regular hourly wage was $8.00, and that is the amount that he was paid for the hours he worked overtime. His overtime wage should have been $12.00. Thus, Plaintiff is due $1,700.00 in overtime for this time period. For the 48-week period from mid-2021 through June 2, 2022. Plaintiff worked between 30 to 50 hours of overtime each week. Plaintiff's regular hourly wage was $10.00 during this time period. It should have been $15.00 for the hours he worked overtime. Therefore, Plaintiff is due between $7,200.00 and $12,000.00 for this time period. The Court will award Plaintiff the median between these two amounts, which is $9,600.00.

An employer who violates the FLSA overtime regulations is also liable to its employees for their "unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, Plaintiff is due another $11,300.00 in liquidated damages.

### E. Attorney's Fees

As discussed above, the Court will issue a default judgment to Plaintiff. Thus, the Court must also grant Plaintiff a reasonable attorney's fee under 29 U.S.C. § 216. For the reasons given below, the Court will award Plaintiff $51,287.40 in attorney's fees.

#### 1. *Lodestar Calculation*

Plaintiff has asked for $141,143.00 in attorney's fees, based on the following calculations:

(1) $64,410.50 (89.15 hours times $770 per hour) for attorney Enrique Chavez, Jr.;

(2) $49,384.50 (176 hours times $330 per hour) for attorney Michael Anderson;

(3) $14,322.00 (45.15 hours times $330 per hour) for attorney Michael Osterberg;

(4) $2,646.00 (9.8 hours times $270 per hour) for attorney Chrstine Chavez-Osterberg; and

10

(5) $10,380.00 (89.9 hours times $120 per hour) for legal assistants.

Att'y Fee Mot. 3.

(a) <u>Hours Spent</u>

First, the Court addresses the time worked by legal assistants. "Compensation for a legal assistant's work may be included in an attorneys' fees award if the legal assistant performed work traditionally done by an attorney . . . ." *Avialae S De RL DE CV v. Cummins Inc.*, No. EP-19-CV-00380-FM, 2023 WL 5163901, at *3 (W.D. Tex. Aug. 3, 2023) (citation omitted). The legal assistants' work in this case is labeled as "Download (or receive), Review, Update Index to case file, and Upload to one data base and to separate server," "Download (or receive), Review, apply Bates numbering, Update Index to case file, and Upload to one data base and to separate server," "Review, Organize in chronological order, Update Index to case file, and Upload to one data base and to separate server," "organize in Chronological Order, and Index by date and topic to Casefile," and "verify Event and Enter Event to Firm's Calendars." Att'y Fee Mot. Ex. 1, at 1–29, ECF No. 79-1. None of this is work traditionally performed by an attorney; rather, it appears to be administrative or clerical duties. Other courts in the El Paso Division have declined to give Plaintiff's attorneys fees for their legal assistants' work when the tasks listed were substantially similar to these ones. *See Avialae S De RL DE CV*, 2023 WL 5163901, at *3; *Hernandez v. Ho'olaulima Gov't Sols., LLC*, No. EP-23-CV-439-KC, 2024 WL 5274527, at *4 (W.D. Tex. Apr. 19, 2024); Report & Recommendation at 10, *Autry v. Ahern Rental, Inc.*, No. EP-19-CV-00154-DCG (W.D. Tex. July 22, 2025), ECF No. 201. Thus, the Court will not award Plaintiff any attorney's fees for these hours.

Next, the Court looks to calculate the hours reasonably expended on the case. Reasonable hours do not include "time that is excessive, duplicative, or inadequately documented." *Combs*,

829 F.3d at 392. "The hours surviving this vetting process are those reasonably expended on the litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

After reviewing the attached timesheets, the Court notes that much of the billing appears to be duplicative. For example, Mr. Chavez and Mr. Anderson both bill 0.1 hour each for the same email correspondence from the Court and opposing counsel and for email correspondence that was sent out by their firm. *See* Att'y Fee Mot. Ex. 1, at 30–35, 43–48. Similarly, Mr. Osterberg's billing records also contain the same email correspondence already covered in Mr. Chavez's and Mr. Anderson's billing records. *See id.* at 57–60. The Court considers this to be unnecessarily duplicative. Further, some of the events that Plaintiff's attorneys bill for stem from Plaintiff's attorneys failing to follow the Court's scheduling order. *See, e.g.*, *id.* at 35 ("Order for Plaintiff to Comply with Rule CV-16f by April 26 Doc 44"). The Court does not consider this to be good billing judgment. And, lastly, some of the events in the billing records are clearly clerical work, particularly all of the entries listed as "Review Calendar Entry & Confirm." *See, e.g.*, *id.* at 41–42. "A finding that some of the hours claimed were for clerical work may justify compensating those hours at a lower rate, and, in some circumstances, might justify a reduction in the number [of] compensable hours." *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985).

The Court can also take notice of the *Johnson* factors "when analyzing the reasonableness of the hours expended and the hourly rate requested." *Watkins*, 7 F.3d at 457. Any of the *Johnson* factors not considered at this stage will be analyzed later to determine if the lodestar should be adjusted. *Id.* One important factor to consider is whether the "plaintiff has achieved only partial or limited success." *Henlsey v. Eckerhart*, 461 U.S. 424, 436 (1983). If he has, then "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* It is axiomatic that 'work on an unsuccessful claim cannot be deemed

to have been expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on [an] unsuccessful claim.'" *Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*, 23 F.4th 408, 416 (5th Cir. 2022) (quoting *Henlsey*, 461 U.S. at 435). "In determining a reasonable attorney's fee award based on the plaintiff's degree of success, '[t]here is no precise rule or formula'; instead, the district court 'necessarily has discretion in making this equitable judgment.'" *Combs*, 829 F.3d at 396 (quoting *Hensley*, 461 U.S. at 436–37). "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.

Plaintiff originally asserted claims of failure to pay overtime, retaliation under the FLSA, sexual harassment under the Texas Commission on Human Rights Act ("TCHRA"), and retaliation under the TCHRA. Am. Compl. ¶¶ 58–66. All of Plaintiff's claims except his overtime claim were dismissed by this Court at summary judgment. Mem. Op. & Order 29–30, ECF No. 39. Thus, his attorneys' hours should be reduced to account for his unsuccessful claims.

When taking all of these factors into consideration, the Court concludes that a 50% reduction in hours is appropriate. Thus, the Court will reduce the hours spent on the case to:

(1) 44.68 hours for Enrique Chavez, Jr.;

(2) 88 hours for Michael Anderson;

(3) 22.58 hours for Michael Osterberg; and

(4) 4.9 hours for Christine Chavez-Osterberg.

(b) <u>Hourly Rate</u>

Second, the Court looks to the proposed hourly rates of Plaintiff's attorneys. "To determine the rate, the court looks to the market rate in the community for similar work." *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 327 (5th Cir. 2023). "[T]he relevant legal community is the

community in which the district court sists." *Hernandez*, 2024 WL 5274527, at *2 (citation omitted). Mr. Chavez asks for an hourly rate of $770. However, the Court looks to the *Hernandez* case, which concluded that, in 2024, a reasonable hourly rate for Mr. Chavez would be $400, based on his experience, "median hourly rates for similarly experienced attorneys throughout the Western District of Texas, attorney's fees awards granted in the El Paso division in recent years, and the effects of inflation." *Id.* at *3. In 2023, the district court in *Avialae* concluded that a reasonable hourly rate for Mr. Chavez would be $350. *Avialae S De RL DE CV*, 2023 WL 5163901, at *6. Taking into account the effects of inflation, the Court concludes that a reasonable hourly rate for Mr. Chavez is $415.[2]

Similarly, the court in *Avialae* concluded that a reasonable hourly rate for Mr. Anderson was $255. *Id.* The *Hernandez* court concluded that a reasonable hourly rate would be $275. 2024 WL 5274527, at *3. Therefore, accounting for inflation, the Court considers $285 to be a reasonable hourly rate for Mr. Anderson. Plaintiff requested that Mr. Osterberg's hourly rate be equal to that of Mr. Anderson. Taking into account that the Court has set Mr. Anderson's rate at $285, the Court will also set Mr. Osterberg's rate at $285.

Lastly, another magistrate judge in this Division recently recommended that a reasonable hourly rate for Ms. Chavez-Osterberg be $251. Report & Recommendation at 8, *Autry v. Ahern Rental, Inc.*, No. EP-19-CV-00154-DCG (W.D. Tex. July 22, 2025). Given that no resume was provided for her, the Court has no way to judge her experience or her market rate. Therefore, the

---

[2] The Court used the Consumer Price Index Inflation Calculator to calculate the hourly rates. *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last visited Aug. 4, 2025). The Court may take judicial notice of the Consumer Price Index. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011).

Court will concur with the opinion of the other magistrate judge and will set her rate at $251 per hour.

Therefore, the Court calculates the lodestar in this case to be $51,287.40, based on the following calculations:

(1) The amount to be awarded to Enrique Chavez, Jr. is $18,542.20 (44.68 hours times $415 per hour);

(2) The amount to be awarded to Michael Anderson is $25,080 (88 hours times $285 per hour);

(3) The amount to be awarded to Michael Osterberg is $6,435.30 (22.58 hours times $285 per hour); and

(4) The amount to be awarded to Christine Chavez-Osterberg is $1,229.90 (4.9 hours times $251 per hour).

2. **Johnson *Factors***

After calculating the lodestar, the Court must consider whether any of the *Johnson* factors suggest an enhancement or reduction of the lodestar. The Court notes "that many of the *Johnson* factors 'are subsumed within the initial calculation' of the lodestar.'" *Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986). After considering all of the *Johnson* factors, the Court does not believe that an adjustment of the lodestar is necessary.

The first, second, third, fifth, seventh, eighth, ninth, and twelfth factors were already addressed when calculating the lodestar. As for the fourth factor, Mr. Chavez asserts that taking on this case prevented his small law firm from taking on other cases. Att'y Fee Mot. 12; Att'y Fee Mot. Ex. A, at 5, ECF No. 79-1. However, he offers no proof to support this assertion. Therefore, the Court sees no reason for an adjustment for this factor.

The sixth factor cannot serve as a basis for an enhancement of a fee. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993) ("[W]e now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing plaintiffs under traditional fee-shifting provisions.").

For the tenth factor, Mr. Chavez asserts that employment cases "are difficult and hard-fought" and that there are few attorneys who will handle employment cases in federal court in El Paso. Att'y Fee Mot. 20–21; Att'y Fee Mot. Ex. A, at 12. However, "such risk simply is not 'the type of undesirability contemplated by *Johnson*,' which aimed the 'undesirability' factor to encourage and compensate civil rights attorneys facing social and economic backlash for their professional efforts to eradicate discrimination." *Hernandez*, 2024 WL 5274527, at *6 (citation omitted). Therefore, the Court will not use this factor to make an adjustment.

For the eleventh factor, there does not appear to be anything unusual about the nature or length of Plaintiff's relationship with his attorneys. Plaintiff met his attorneys in 2022 and his relationship with them will conclude at the end of this case. Att'y Fee Mot. 21; Att'y Fee Mot. Ex. A, at 13. Plaintiff's attorney asserts that this should "translate into a higher fee" without explaining why. Att'y Fee Mot. 21. The Court does not believe that this factor should lead to an adjustment of the lodestar.

### 3. Costs

Plaintiff asks for costs in the amount of $1,257.00:

(1) Filing fee of $402.00;

(2) Legal process service of $250.00;

(3) Entity research charges of $3.00;

(4) Mediation invoice of $600.00; and

  (5) A packing slip invoice for requested records of $2.00.

Att'y Fee Mot. Ex. 1, at 65.  "A prevailing party is presumptively entitled to recover all of its costs." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 431 (8th Cir. 2017) (citation omitted).  "However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization." *Id.* (citation omitted).  The fee-shifting provision of 29 U.S.C. § 216(b) can be the statutory authorization for awarding costs. *Id.* at 432.

  "The 'costs that may be charged to losing defendants include those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Bocangel v. Warm Heart Fam. Assistance Living, Inc.*, 561 F. Supp. 3d 534, 540 (D. Md. 2021) (citation omitted).  The Court concludes that all of the costs asked for here are reasonable out-of-pocket expenses.  Therefore, the request for costs will be granted.

### IV. CONCLUSION

  For the foregoing reasons, Defendant's answer will be stricken from the record.  Plaintiff Jose Preciado's Motion for Sanctions, Entry of Default, and Default Judgment (ECF No. 78) is **GRANTED** and Plaintiff is awarded $22,600.00 in damages.

  **IT IS FURTHER ORDERED** that Plaintiff Jose Preciado's Motion for Attorney Fees and Costs (ECF No. 79) is **GRANTED in part** and **DENIED in part.**  Plaintiff is awarded $51,287.40 in attorney's fees and $1,257.00 in costs.

  **IT IS FURTHER ORDERED** that all monetary judgments awarded herein shall accrue post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961, calculated from the date of this Order.

The Clerk of the Court is directed to send a copy of this order, via United States certified mail, to Recon Security Corp. at 11930 Vista Del Sol, Ste. C, El Paso, Texas 79936.

The Clerk shall close the case.

**SIGNED** this 13th day of August, 2025.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**